McKinney, J.,
delivered the opinion of the Court.
This was an injunction bill to restrain the corporation from proceeding to collect a railroad tax assessed upon the lands of the complainant, situate within the limits of the corporation.
It appears that, on the 28th of February, 1854, an act was passed by the Legislature of Tennessee, by which the “ Wills’ Valley*Railroad Company of Alabama” were “authorized and permitted to extend their road from the southern line of this State, in Lookout Valley, to a connection with the Nashville and Chattanooga Railroad, at Chattanooga or elsewhere *319 in this State.” It seems that the road, as actually located, unites with the Nashville and Chattanooga Road some six miles west of the town of Chattanooga.
On the 21st of August, 1854, by an ordinance of the board, a subscription of $100,000 of the stock of said “Wills' Yalley ” Road was made on behalf of the corporation of Chattanooga. The ordinance provides, that the amount thus subscribed should “ be applied in preparing for the iron that part of the road lying in Dade county, Georgia, and De Kalb county, Alabama ” — that being the portion of the road nearest to the Tennessee line ; and the road extending within the limits of this State only about one mile.
It further appears, that prior to the 17th day of February, 1854, the complainant was the owner of a tract of land adjoining the town of Chattanooga, but outside of the corporate limits of the town as then defined; part of which land was then improved and cultivated, and part was woodland. By an act of the Legislature, passed on the day last aforesaid, the corporate limits of the town were extended so as to take in a large quantity of territory not before included; which act contains a proviso to the effect that the lands thus taken in “ shall not be subject to a corporation tax while held as woodland, or for farming purposes; but may be taxed whenever laid off and sold, or occupied as town lots less than one acre.” By a subsequent act, passed the 20th of November, 1857, the foregoing proviso was repealed, “ so far as to render all lands within the present limits of said corporation liable to railroad tax, should the same be voted and imposed by said corporation.”
The bill alleges that complainant’s lands, brought within the limits of the corporation by the act of 1854, are still held by him, in part “as woodland,” and in part “for farming purposes” — not laid off, sold, or occupied as town lots. And the object of the bill is to enjoin the collection of the tax assessed upon this portion of his town property.
The charter of incorporation of the town of Chattanooga (act of 1851, ch. 13, sec. 15) provides that “the said corpo *320 ration shall have power to subscribe for stock in any railroad or turnpike road company, and pay for the same with its bonds or otherwise.”
The complainant resists this tax mainly on two grounds: First, it is insisted that the act of 1857 is void. The argument assumes that the act of 1854, exempting the lands thereby included from “a corporation 'tax, while held as woodland or for farming purposes,” having been assented to and accepted by the corporation as an amendment of its charter, was a contract between the corporation and the owners of the land thus included; that upon this condition of exemption from corporation tax, while held as woodland or for farming purposes, the lands were brought within the corporation.; and the owners thereby became vested with a right to hold the same, until laid off and sold as town lots, exempt from a corporation tax for any purpose.
We are unable to assent to the correctness of this argument. This case is wholly unlike the case of The State of New Jersey v. Wilson, 7 Cranch, 164. There, in consideration of the surrender by the tribe of Delaware Indians of their claims to a large portion of territory in New Jersey, the government agreed to purchase a tract of land on which they might reside. An act of the Legislature was passed, in 1758, to give effect to this agreement, in which it was provided that the lands to be purchased for the Indians should not thereafter be subject to any tax. After residing on the lands thus purchased until 1801, the Indians obtained permission from the Legislature to sell the same, which was done. And, in 1804, the Legislature passed an act repealing the act of 1758, which exempted said lands from taxation. The Court held that the transaction between the Indians and the government of New Jersey was a contract founded on a valuable consideration given by the Indians; that the privilege of exemption from taxation was annexed to the land itself; and that the act of 1804 impaired the obligation of the contract, and consequently was void. This was unquestionably correct.
Eut the case under consideration is destitute of every ele *321 ment of a contract. The extension of the corporate limits of Chattanooga was an exercise of governmental power of which the persons newly taken in could not be heard to complain; they had no voice in the matter, no power to resist, nor was any legal right of theirs infringed thereby. The provision of the act exempting their lands for a time from a corporation tax was without any consideration moving from them, and purely gratuitous on the part of the Legislature; and, to say the least of it, was an invidious and improvident provision made in their favor.
It is unquestionably true that the government may surrender the power of taxation, in respect to particular lands, in favor of an individual; and it is no less true that the provision of the Constitution securing the inviolability of contracts extends as much to contracts with a State as to contracts between individuals. But the surrender of this, or any of the rightful powers of government, is not to be presumed; nor is the bestowal of a privilege, for a limited time, and without consideration, to be taken as obligatory on the Legislature in a case like the present.
The exemption contained in the act of 1854 was a privilege-which the Legislature, in its discretion, might bestow, and which it might, at pleasure, take away, inasmuch as no private-vested right was aifected in the sense of the Constitution. The grant of the privilege, and its resumption, were alike discretionary matters of sovereignty.
The idea of a contract between the corporation and the-owners of land, taken in by the act of 1854, has no foundation to rest on.
The other ground assumed is, that the “Will’s Yalley Railroad ” is not a “ corporation purpose ” of the town of Chattanooga, in the sense of the Constitution. Art. 2, sec. 29. Upon this point a great deal might be said on both sides to but little profit. .Every attempt to lay down an exact general rule, by which to determine what is “a corporation purpose,,rmust prove nugatory. The question must, necessarily, be decided in view of the facts of each particular case. And while *322 we do not mean to say that the judgment o>f the local government of the town is to be taken as conclusive of the question whether the object proposed be a legitimate corporation purpose, yet, we think it might, in general, be safely taken as prima facie evidence of the fact; for it will perhaps be found, in most cases, that an intelligent board of aldermen are more capable of forming a correct judgment, as to what measures are of a nature to promote, more or less directly, the general interests and prosperity of the town, than any other tribunal.
The force of the objection, in the present case, is placed upon the fact that the “ Will’s Valley Railroad ” stops short, some six miles, of the town of Chattanooga.. We are unable to see the force of this objection. If it be a matter of vital importance to the permanent interests of Chattanooga to have a direct communication opened up into the interior of Alabama and other portions of the South, by means of the “Will’s Valley Railroad ” — and this does not seem to be seriously questioned — how can it be regarded as a matter of any practical importance whether the trains of the latter company reach Chattanooga upon a road of their own, running parallel, for the distance of six miles, with the Nashville and Chat-tanooga Road, or upon the latter road ? For anything that we can see, the advantages would be precisely the same. 'Therefore there is nothing in this objection. The appropriation of the money to the construction of a part of the road dying beyond the limits of Tennessee is not objected to in the ■ argument here; nor could this be made a ground of valid ■ objection, under the circumstances of this case. 1 Sneed, 667.
The objection that the proposition to subscribe for the stock ■was not submitted to a vote of the inhabitants of the town is ■not well founded. The Legislature was authorized by the Constitution to confer the power, directly and exclusively, mpon the mayor and aldermen. Con., art. 2, sec. 29.
Upon the whole, we perceive no error in the decree of the ^Chancellor dismissing the bill, and it will be affirmed.